IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| COLT HENDERSON, § | |
| § | |
| Plaintiff, § | CIVIL ACTION NO. 4:21-CV-00797-SDJ-CAN |
| § | |
| v. § | |
| § | |
| COMMISSIONER, SSA, § | |
| § | |
| Defendant. § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff brings this appeal for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") pursuant to 42 U.S.C. § 405(g), denying his claim for benefits. After reviewing the Briefs submitted by the Parties, as well as the evidence contained in the administrative record, the Court recommends that the Commissioner's decision be **AFFIRMED**.

**RELEVANT BACKGROUND**

On June 20, 2019, Plaintiff filed applications for disability income benefits ("DIB") under Title II of the Social Security Act, and supplemental security income ("SSI") under Title XVI of the Social Security Act [TR 209-215]. Plaintiff's applications allege disability on the basis that "he can't walk very far or very long; [] knees start hurting and it radiates; into [] feet and [] lower back; spinal stenosis; vertebras are shrinking; major depression; generalized anxiety disorder; agoraphobia" [TR 110]. Plaintiff alleges an onset of disability date of May 7, 2017 [TR 209]. Plaintiff was born on August 9, 1988, making him almost twenty-eight (28) years of age on his alleged onset date of May 7, 2017 [TR 250]. Plaintiff's age classification at alleged onset was that of a "younger person." *See* 20 C.F.R. §§ 404.1563, 416.963. Plaintiff has completed some college [TR 58]. Plaintiff's last full-time employment was as a stocker/general labor [TR 253, 268].

On September 18, 2019, Plaintiff's applications were initially denied [TR 91, 107], and again on reconsideration on November 7, 2019 [TR 123, 137]. On December 10, 2019, Plaintiff filed a written request for an administrative hearing ("Hearing") [TR 168-169]. Plaintiff and a vocational expert ("VE") appeared and testified at a hearing (via telephone due to the COVID-19 Pandemic) on January 5, 2021 [TR 46-75]. Plaintiff was not represented by counsel at Hearing [TR 58]. Plaintiff's application was denied by the ALJ following Hearing on January 19, 2021 [TR 23-45].

More specifically, after hearing testimony and conducting a review of the facts of Plaintiff's case, the ALJ made the following sequential evaluation [TR 23-41].[1] The ALJ found Plaintiff met the insured status requirements of the Act through December 31, 2020, and that Plaintiff had not engaged in substantial gainful activity since May 7, 2017, the onset date [TR 29]. At step two, the ALJ found that Plaintiff had severe impairments of degenerative disc disease, obesity, and depression [TR 29]. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 416.920(d), 416.925 and 416.926) [TR 29]. At step four, the ALJ evaluated Plaintiff's residual functional capacity ("RFC") based on the requirements of 20 C.F.R. § 404.1529, SSR 16-3p and in accordance with the requirements of 20 C.F.R. § 404.1520(c):

---

[1] Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability. 20 C.F.R. § 404.1520. First, a claimant who is engaged in substantial gainful employment at the time of his disability claim is not disabled. 20 C.F.R. § 404.1520(b). Second, the claimant is not disabled if his alleged impairment is not severe, without consideration of his residual functional capacity, age, education, or work experience. 20 C.F.R. § 404.1520(c). Third, if the alleged impairment is severe, the claimant is considered disabled if his impairment corresponds to a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if he is capable of performing his past work. 20 C.F.R. § 404.1520(e). Finally, a claimant who cannot return to his past work is not disabled if he has the residual functional capacity to engage in work available in the national economy. 20 C.F.R. § 404.1520(f). Under the first four steps of the analysis, the burden lies with the claimant to prove disability and at the last step the burden shifts to the Commissioner. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If at any step the Commissioner finds that the claimant is or is not disabled, the inquiry terminates. *Id.*

REPORT AND RECOMMENDATION − Page 2

> The claimant is able to perform work requiring occasional bending, crouching and crawling. The claimant is unable to perform work requiring the climbing of ladders, ropes or scaffolds. The claimant is able to perform work requiring occasional climbing of stairs or ramps. The claimant must avoid hazards such as unprotected heights and mobbing machinery. The claimant is able to perform simple, routine tasks with a specific vocational preparation (SVP) of one to two. The claimant is unable to perform work requiring contact with the public. The claimant is able to perform work requiring occasional contact with coworkers and supervisors.

[TR 31]. Continuing the step four analysis, the ALJ found that Plaintiff is unable to perform any past relevant work (20 C.F.R. § 404.1565) [TR 39]. At step five, the ALJ found that based on Plaintiff's age, education, work experience, RFC, and the testimony of a vocational expert, the ALJ found there were jobs, existing in significant numbers in the national economy that Plaintiff could perform (20 C.F.R. § 404.1569 and 404.1569(a)) [TR 40]. Thus, the ALJ held that Plaintiff has not been under a disability as defined in the Social Security Act, from May 7, 2017, through the date of this decision (20 C.F.R. § 404.1520(g)) [TR 41].

On the same day the unfavorable decision was issued, Plaintiff requested review of the ALJ's decision by the Appeals Council [TR 206-208]. The decision of the ALJ became the final decision of the Commissioner on June 30, 2021, when the Appeals Council denied Plaintiff's request for review [TR 12-15]. On October 7, 2021, Plaintiff filed the instant suit [Dkt. 1]. On March 16, 2022, the Administrative Record was received from the Social Security Administration [Dkt. 12]. On May 24, 2022, Plaintiff filed his Brief [Dkt. 18]. On July 25, 2022, the Commissioner filed its Brief in Support of the Commissioner's Decision [Dkt. 20]. On August 4, 2022, Plaintiff filed his Reply [Dkt. 21].

## STANDARD OF REVIEW

In an appeal under § 405(g), the Court must review the Commissioner's decision to determine whether there is substantial evidence in the record to support the Commissioner's factual findings and whether the Commissioner applied the proper legal standards in evaluating the

evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). It is more than a mere scintilla and less than a preponderance. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). The Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner, but it will carefully scrutinize the record to determine if evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). Conflicts in the evidence, including the medical evidence, are resolved by the ALJ, not the reviewing court. *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985).

Disability insurance is governed by Title II, 42 U.S.C. §§ 404 et. seq., and SSI benefits are governed by Title XVI, 42 U.S.C. §§ 1381 et. seq., of the SSA. The law and regulations governing the determination of disability are the same for both DIB and SSI. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The legal standard for determining disability under the Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see also Cook*, 750 F.2d at 393. "Substantial gainful activity" is determined by a five-step sequential evaluation process, as described above. 20 C.F.R. § 404.1520(a) (4).

## ANALYSIS

Plaintiff asserts three points of error in this cause; Plaintiff alleges (1) he was inadequately informed of his right to counsel at Hearing; (2) the Appeals Council erred in making no findings on the post-hearing evidence submitted by Plaintiff; and (3) the ALJ failed to adequately articulate his analysis of the persuasiveness of the medical opinions of record.

*Plaintiff's Statutory Right to Counsel*

Plaintiff's first point of error advances that the oral discussion between Plaintiff and the ALJ at Hearing was inadequate to waive Plaintiff's statutory right to counsel [Dkt. 18 at 8-9]. Relying on *Gullet v. Chater*, 973 F. Supp. 614 (E.D. Tex. 1997), Plaintiff argues that a claimant must receive *both* written and oral notice of his right to counsel and *both* the written and oral notice must include the following: (1) the manner in which an attorney can aid in the proceedings; (2) the possibility of free counsel or a contingency arrangement; and (3) the limitation of attorney fees to twenty-five percent of past due benefits and the required court approval of fees [Dkts. 18 at 10; 21 at 3]. Plaintiff contends he received inadequate oral notice at Hearing. The Commissioner rejoins that Plaintiff's interpretation of *Gullett* is not sustainable, and that the proper inquiry is the totality of notice provided to Plaintiff [Dkt. 20 at 7].

It is undisputed that claimants have a statutory right to counsel at a Social Security hearing. 42 U.S.C. § 406; *see also* 20 C.F.R. §§ 404.971, 416.1505, 416.1506. To validly waive that right, a claimant must first receive adequate notice of "all of the important facts touching upon [his or] her right to, and opportunity to have free representation at the hearing." *Clark v. Schweiker*, 652 F.2d 399, 403 (5th Cir. Unit B July 1981); *see also Brock v. Chater*, 84 F.3d 726, 729 n.1 (5th Cir. 1996) ("Generally, without adequate notice a claimant cannot be held to have validly waived his right to counsel"). Adequate or sufficient information regarding the right to representation includes (1) the manner in which an attorney can aid in the proceedings; (2) the possibility of free counsel or a contingency arrangement; and (3) the limitation of attorney fees to twenty-five percent of past due benefits and the required court approval of fees. *See Clark,* 652 F.2d at 403*; see also Gullet*, 973 F. Supp. at 620. "Written notice given prior to a hearing, accompanied by a reminder at the hearing itself of the right to counsel, [generally will] suffice to inform a claimant of her

right." *Creel v. Comm'r*, No. 2:21-cv-00039, 2022 WL 3756513, at *3 (S.D. Miss. Aug. 30, 2022) (citing *Castillo v. Barnhart*, 325 F.3d 550, 552 (5th Cir. 2003); *see also Kirby v. Colvin*, 4:12-cv-03257, 2013 WL 12108134, at *3 (S.D. Tex. June 27, 2013) ("The Fifth Circuit has held that numerous prehearing notices to the claimant of right to counsel and ALJ's reminder at the hearing itself, satisfies the notice obligation for an informed waiver."), *report and recommendation adopted*, H-12-3257, 2013 WL 12107664 (S.D. Tex. July 31, 2013). However, notice will be found inadequate if the ALJ misleads the claimant or otherwise discourages her from exercising her right." *Creel,* 2022 WL 3756513, at *3 (citing *Johnson v. Astrue*, 326 F. App'x 737, 739 (5th Cir. 2009) (per curiam) (holding that a waiver was invalid where "the ALJ effectively discouraged [the claimant] from exercising [his] right by clearly rejecting that counsel would do anything beneficial at the hearing")).

Here, based on the totality of notice received by Plaintiff, he validly waived his right to counsel. Plaintiff received multiple written notices of his right to counsel, including in the Notices of Disapproved Claim [TR 141, 147], as well as the Request for Hearing Acknowledgment Letter, dated January 24, 2020 [TR 170-175], and the Notice of Hearing, dated October 5, 2020 [TR 185-191], each of which included Social Security Administration Publication 05-10075, entitled "*Your Right to Representation*," and states in pertinent part:

> You can have a representative, such as an attorney, help you when you do business with Social Security. We will work with your representative, just as we would with you.
> For your protection, your representative cannot charge or collect a fee from you without first getting written approval from us. However, your representative may accept money from you in advance as long as it is held in a trust or escrow account.
>
> …
>
> What a representative can do

> Once you appoint a representative, he or she can act on your behalf in most Social Security matters by:
> - Getting information from your Social Security file;
> - Helping you get medical records or information to support your claim;
> - Coming with you, or for you, to any interview, conference or hearing you have with us;
> - Requesting a reconsideration, hearing or Appeals Council review; and
> - Helping you and your witnesses prepare for a hearing and questioning any witnesses.
>
> Your representative also will receive a copy of the decision(s) we make on your claim(s).
>
> …
>
> Some organizations can help you find an attorney or give you free legal services if you qualify. Some representatives do not charge unless you receive benefits. Your Social Security Office has a list of organizations that can help you find a representative.
>
> …
>
> What your representative may charge you
> To charge you a fee for services, your representative first must file either a fee agreement or a fee petition with us.
> Your representative **cannot** charge you more than the fee amount we approve. If you or your representative disagree with the fee we approve, either of you can ask us to look at it again.
> A representative who charges or collects a fee without our approval, or charges or collects too much, may be suspended or disqualified from representing anyone before the Social Security Administration and also may face criminal prosecution.

[TR 190].

Plaintiff received still a further notice via telephone on November 18, 2020 by and through the SSA's COVID Enhanced Outreach Conference ("CEO") [TR 355]. During such call, the Social Security office (1) "[p]rovided the claimant information regarding their right to representation"; (2) "[p]rovided the claimant with contact information for representative/representative organizations"; and (3) "[i]nformed the claimant that the Agency may not grant a postponement to obtain representative absent good cause (if applicable)" [TR 335]. Plaintiff affirmed his understanding of the information provided regarding his right to

REPORT AND RECOMMENDATION − Page 7

representation [TR 355]. Plaintiff therefore received, prior to the time of Hearing, both written and oral notifications of his right to counsel. Plaintiff received a further oral reminder of his right to counsel at the time of Hearing. The ALJ and Plaintiff had the following exchange at the outset of the Hearing:

> ALJ: Well, according to our -- if you're going to represent yourself, then you have an opportunity for a one-time postponement to go out and hire somebody to represent you. Let me see on this application. You filed your application in June of 2019, so it's been a year and a half. Have -- you have no intentions of hiring somebody to represent you that's going to be versed in Social Security disability rules and regulations?
> 
> CLMT: I've contacted several firms here in the area, and they've all told me that I have to be legally disabled. And I don't -- they won't tell me what that means. So, I don't even get to talk to a -- I never got to talk to an actual attorney. I guess it was just either a secretary or a paralegal. And --
> 
> ALJ: Well --
> 
> …
> 
> ALJ: Interesting. Because you can't be legally disabled until your -- a judge finds you legally disabled.
> 
> CLMT: That's what I thought. That's what I thought, Your Honor. I mean, they wouldn't tell me what they mean.
> 
> ALJ: Yeah, okay. This -- let me -- we need to go ahead because we have other hearings that are scheduled behind you.
> 
> CLMT: Okay.
> 
> ALJ: So, I need to offer you an opportunity for a one-time postponement to try and hire someone to represent you that's knowledgeable in the Social Security disability rules and regulations. Or you can go ahead and represent yourself. You have to be aware that I do not represent you, I represent the government. And
> 
> CLMT: Yes, I understand.
> 
> ALJ: I have to make a decision and I have to make my decisions based strictly on the medical records.
> 
> CLMT: Yes, Your Honor.
> 
> ALJ: Okay. So, do you want to postpone this and try to hire somebody, or do you want to go ahead and represent yourself today?
> 
> CLMT: I'll go ahead and represent myself.
> 
> ALJ: Okay. So, let the record reflect you were offered the opportunity for a postponement, declined, and wish to proceed per se.

[TR 50-52]. The ALJ confirmed during Hearing that Plaintiff had completed some college and that he was not illiterate—he could both read and write [TR 58].

The written notices attached to the Request for Hearing Acknowledgment Letter and Notice of Hearing provided in-depth guidance as to Plaintiff's right to counsel. The text of the notice reflects Plaintiff was made aware of his right to counsel, what a representative could do for him, the possibility of receiving free legal services, and if a contingency arrangement was reached the amount that could be charged for services. And as noted, Plaintiff is not illiterate. During the November 18, 2020, CEO call, Plaintiff was again made aware of his right to counsel, and Plaintiff affirmed that he understood his right to representation. Plaintiff received a final oral reminder at Hearing. Thus, in stark contrast to *Gullett*, where the claimant received no prior written notice and grossly inadequate notice at hearing, here, Plaintiff was provided with multiple reminders of his right to counsel, both written, and oral, making this case more akin to *Kirby v. Colvin*, which the Court finds persuasive, where (1) the plaintiff received notice in writing prior to the hearing; (2) later confirmed that he understood this right during a telephone conversation; and (3) during Hearing, affirmatively represented to the ALJ that he wanted to proceed pro se, even after the ALJ allowed him the opportunity to postpone the hearing to obtain counsel. *See Kirby*, 2013 WL 12108134, at *3 ("Kirby received the required statutory notice in writing before the hearing. At the hearing, Kirby acknowledged that he received and understood them, and that he consulted with an attorney, but chose to represent himself."). Further, the ALJ did not discourage Plaintiff from exercising his right to counsel. Consequently, Plaintiff was "adequately notified" of his right to counsel; he received the necessary information to make a knowing and intelligent waiver of his right to counsel. Being possessed of this information, Plaintiff waived that right when he chose to go forward at the Hearing.

*New Evidence Submitted to the Appeals Council*

Plaintiff's second point of error advances that the Appeals Council erred in failing to make findings regarding his post-Hearing submission to the Appeals Council [Dkt. 18 at 15]. When he requested Appeals Council review, Plaintiff submitted additional evidence—a signed signature page by Dr. Davis and a medical source statement from Dr. Starr. The Appeals Council determined it did not provide a basis for changing the ALJ's decision. The Court finds that under the applicable regulations, the Appeals Council did not err in its review.

Title 20 C.F.R. § 404.970 sets forth the circumstances when the Appeals Council will review the ALJ's decision. When Plaintiff requested Appeals Council review on January 19, 2021, a revised version of § 404.970, effective on January 17, 2017, was in force. The 2017 version of § 404.970 raised the bar for obtaining Appeals Council review of an ALJ's unfavorable decision. The prior regulations permitted a broader range of submissions and required that the Appeals Council review the expanded record. *See, e.g., Knight v. Kijakazi*, No. 4:21-cv-152, 2022 WL 2813727, at *6 (N.D. Miss. July 18, 2022); *Higginbotham v. Barnhart*, 405 F.3d 332, 337-38 (5th Cir. 2005). Under the revised regulation, § 404.970(a)(5), the Appeals Council reviews a case if the claimant proffers "additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." *Compare* 20 C.F.R. § 404.970(b) (2016) with 20 C.F.R. § 404.970(a)(5) (2020). The revised regulation further added the requirement of "good cause" for a claimant's failure to proffer the evidence sooner. *Id*.

Here, the Appeals Council made the following finding on the additional evidence:

> You submitted a two-page medical source statement from Shawn Davis, M.D. dated May 7, 2021 and a six page medical source statement from Shannon Starr, M.D. dated May 10, 2021. We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence.

[TR 13]. Plaintiff seemingly suggests that the Appeals Council was required to further discuss or evaluate the evidence [Dkt. 21 at 6 ("while the Appeals Council stated the evidence did not show a reasonable probability it would change the outcome, the Court has no findings available to determine how such a decision was made.")]. However, under both the current and prior regulations, the Appeals Council is not required to make specific findings of fact or provide a detailed explanation of evidence when the claimant's request for review is denied. *Lewis v. Saul*, No. H-19-2380, 2020 WL 4194023, at *9 (S.D. Tex. July 7, 2020) (quoting *Sun v. Colvin*, 793 F.3d 502, 511 (5th Cir. 2015) ("The regulations do not require the Appeals Council to provide a discussion of the newly submitted evidence or give reasons for denying review."), *report and recommendation adopted*, No. H-19-2380 (S.D. Tex. July 21, 2020). Plaintiff has offered no showing that the Appeals Council failed to properly apply the revised regulations governing its consideration of submissions of additional evidence. *See Rutledge v. Comm'r*, No. 4:20-cv-00708, 2021 WL 4081091, at *13 (N.D. Al. Sept. 8, 2021) (finding when claimant presents new evidence and Appeals Council denies review, the Appeals Council need not give a detailed rationale for why the new evidence submitted did not change the ALJ's Decision); *Knight*, 2022 WL 2813727, at *6 ("[T]here is no longer any requirement that the Appeals Council re-evaluate the evidentiary record along with submissions of post-hearing evidence as part of its review.").[2] There is no

---

[2] Moreover, Plaintiff bore the burden of showing a "reasonable probability" before the Appeals Council that the additional evidence would change the outcome of the decision, and also good cause. *See Artis v. Kijakazi*, No. 3:21-cv-13, 2022 WL 704205, at *4 (N.D. Miss. Mar. 8, 2022). That burden was not met in this case. Indeed, even though the Davis opinion was submitted without a signature, the ALJ reviewed it exhaustively in the Decision [TR 38-39]. The ALJ supplied multiple reasons for finding Dr. Davis' opinions not persuasive, not only its lack of signature and

reversible error on this point. *See Waites o/b/o T.L.W. v. Saul*, 2020 WL1342455, at *4 (N.D. Tex. Mar. 23, 2020) (quoting *Johnson v. Berryhill*, No. 4:16-cv-0241, 2017 WL 2964882, at *5 (N.D. Tex. June 26, 2017), *report and recommendation adopted*, No. 4:16-cv-0241, 2017 WL 2964882 (N.D. Tex. July 11, 2017) ("While the courts do not consider whether the Appeals Council properly considered submitted evidence, they do review whether the Appeals Council applied appropriate legal standards.").

***Supportability and Consistency of Medical Evidence***

Plaintiff's final point of error is that the "[t]he ALJ committed reversible error by failing to follow the mandatory regulatory requirements for evaluating the persuasiveness of the medical opinions and the prior administrative medical findings" [Dkt. 18 at 18]. More specifically, Plaintiff argues that the ALJ erred in evaluating Dr. Davis and Dr. Ryser's medical opinions. Plaintiff avers that the ALJ offered only conclusory statements for rejecting such medical statements and did not comply with the articulation requirements under 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Both Parties agree that the Social Security Administration's new rule for assessing medical opinion evidence governs all claims filed on or after March 27, 2017, and thus applies to Plaintiff's claims herein. *See* 20 C.F.R. § 404.1520c. The old rule required the ALJ to give a treating physician's opinion "controlling weight" in the absence of specific mitigating factors, and to "always give good reasons" in the determination for the weight given to a treating physician's

---

attribution, as set forth more fully *infra*. There is no reasonable probability the signature page would have changed the outcome of the decision. A similar conclusion must be reached as to the Starr Medical Source Statement. *See Strickland v. Washington*, 466 U.S. 668, 669 (1984) (defining reasonable probability as "a probability sufficient to undermine the confidence in the outcome."); *see also Harrington v. Richter*, 562 U.S. 86, 112 (2011) ("The likelihood of a different result must be substantial, not just conceivable."). The Starr Medical Source Statement is wholly inconsistent with the remaining contemporaneous medical evidence submitted by Dr. Starr and which was considered at the time of Hearing. Consider, Dr. Starr previously reported that Plaintiff appeared not be in "acute distress," had a "normal gait," and "moved his extremities well" [TR 729-738].

REPORT AND RECOMMENDATION − Page 12

opinion. 20 C.F.R. § 404.1527(c)(2). The new rule eliminates the "controlling weight" given to treating physicians. 20 C.F.R. § 404.1520c(a).

The new rule, 20 C.F.R. § 404.1520c, provides that the ALJ will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from the [claimant's] medical sources." 20 C.F.R. § 404.1520c(a).[3] Rather, the ALJ shall "evaluate the persuasiveness" of all medical opinions and prior administrative medical findings using the factors set forth in the regulations: (1) supportability; (2) consistency; (3) relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors, including but not limited to evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of the agency's disability program's policies and evidentiary requirements. 20 C.F.R. § 404.1520c(a), (c)(1)-(5). However, supportability and consistency are the most important factors. *See* 20 C.F.R. §§ 404.1520(b)(2), 404.1520c(a). Supportability means the degree to which objective medical evidence supports the medical opinion at issue, and consistency looks to the consistency between different medical opinions across the record. 20 C.F.R. § 404.1520c(c)(1)-(2).[4] Important to the instant analysis, the new rule also

---

[3] In transitioning to the new rule, the administration noted, "[t]he current policies that focus upon weight, including the treating source rule, have resulted in reviewing courts focusing more on whether we sufficiently articulated the weight we gave opinions rather than on whether substantial evidence supports the Commissioner's final decision." *Webster v. Comm'r*, No. 3:19-cv-97-DAS, 2020 WL 760395, at *3 (N.D. Miss. Feb. 14, 2020). "In other words, the new rules are an attempt to eliminate confusion about a hierarchy of medical sources. . . . Reviewing courts, therefore, will now look first and foremost simply to whether substantial evidence exists to support an ALJ's opinion and not whether one opinion was correctly weighted in relation to any other(s)." *Id.*

[4] "With respect to 'supportability,' 'the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase,'" and consistency is "an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Luckett v. Kijakazi*, No. 4:20-CV-04002, 2021 WL 5545233, at *4 (S.D. Tex. Nov. 26, 2021) (citing 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)) (quoting *Vellone v. Saul*, No. 1:20-CV-00261-RAK-HP, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021). "Considering the newness of the regulations, there is a dearth of caselaw concerning what

changed the articulation requirements for how the ALJ considers each medical opinion. The new articulation requirements state:

> (1) Source-level articulation. Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.

20 C.F.R. § 404.1520c(b)(1)-(2); *see Moore v. Comm'r*, No. 3:20-CV-241-SA-DAS, 2021 WL 2834395, at *2 (N.D. Miss. July 7, 2021) (finding that the medical source regulations do not "require the ALJ to expressly address the persuasiveness of every opinion within every report").

Dr. Shawn Davis is stated to have completed a Residual Functional Capacity Form ("RFC Form"); the RFC Form at the time of Hearing was not signed by Dr. Davis, nor was it dated [TR 664-668]. All the same, it is undisputed that the ALJ addressed this form in his evaluation of the record evidence, set forth *infra* [TR 38-39]. The RFC Form states that it is based upon Plaintiff's presentation in the ER on two separate dates and provides a diagnosis of severe spinal stenosis with T12-L1 disc herniation [TR 664]. The RFC Form continues that Plaintiff's prognosis is poor, that surgical intervention is likely necessary, and Plaintiff's disability or impairment is expected to last longer than a year; prevents Plaintiff from standing for six to eight hours; sitting upright for six to eight hours; and that he cannot sit or stand for this length because of severe back pain and

---

constitutes a sufficient 'explanation' of supportability and consistency under 20 C.F.R. § 404.1520c(b)(2)." *Liguez v. Kijakazi*, No. 4:20-CV-02798, 2021 WL 4943321, at *4 (S.D. Tex. Aug. 11, 2021), *report and recommendation adopted sub nom. Liguez v. Comm'r of Soc. Sec.*, No. 4:20-CV-2798, 2021 WL 4941997 (S.D. Tex. Oct. 22, 2021). But "this is not a case in which the ALJ found no medical opinion persuasive and crafted a completely distinctive RFC." *Id.* at *9.

REPORT AND RECOMMENDATION − Page 14

weakness in legs [TR 665]. The RFC Form provides that Plaintiff's disability requires him to lie down during the day; he can reach above his shoulders frequently; he can reach below his waist consistently; he can rarely reach down towards the floor; he can carefully handle objects frequently; and can lift and carry only five pounds on a regular basis [TR 666]. The RFC Form concludes that Plaintiff's "symptoms have advanced to the point he is no longer able to stand and ambulate consistently enough to be employed. Even if he tried to work from a seated position, the pain would be too severe" [TR 668].

With respect to Dr. Davis's records and opinions, the ALJ's Decision states:

> At Exhibit 7F pages 13-17, an unsigned and undated residual functional capacity form was attributed to Shawn Davis, M.D. The form indicated that the claimant had disabling low back pain. The finding of something disabling is a finding reserved solely for the discretion of the Commissioner and is found to not be persuasive. It was indicated that the claimant's symptoms had worsened to the point that he was unable to work, resulting in severe depression. This is also a finding reserved solely for the discretion of the Commissioner. It was opined that the claimant was unable to stand for six to eight hours, or sit upright for six to eight hours, due to pain in the back and weakness in the legs. It was opined that the claimant was required to lie down during the day, but no specific amount was indicated. It was opined that the claimant's ability to walk was variable, from no ability to a few minutes. The claimant was opined to be rarely able (defined as zero to thirty-percent) to reach down towards the floor. The claimant was opined to be frequently able (thirty-percent to seventy-percent) to reach up above the shoulders and carefully handle objects. The claimant was consistently able (not clearly defined, but likely defined as seventy-percent to one-hundred-percent) to reach down to waist level. It was opined that the claimant was able to "regularly/daily" lift and carry five to ten pounds. The claimant was prevented from certain motions such as lifting, pulling and holding objects, but the specific motion or degree of limitation was not indicated. The claimant had difficulty bending, squatting, kneeling and turning the body, but the degree of limitation was not indicated. The claimant needed assistance to travel alone, due to back pain and weakness. It was opined that the claimant was no longer able to stand and ambulate consistently enough to be employed and the pain was too severe to work from a seated position. This is a finding reserved solely for the discretion of the commissioner. These limitations have been considered and are found to not be persuasive, as they are not clearly endorsed by a physician, and there is no date on the form. Furthermore, the degree of limitation as offered is not consistent with examination findings or objective testing as shown in the above medical evidence of record.

[TR 38-39].

On September 11, 2019, Dr. Christina Ryser completed a psychological evaluation report [TR 595-602]. Dr. Ryser opined on Plaintiff's thought process,

> Thought Process: The claimant presented no clear evidence (either from history or observation) of a formal thought disorder. There was no looseness of associations, flight of ideas, circumstantiality, or tangentiality. Furthermore, he provided no history consistent with having suffered from a thinking disturbance in the past. The claimant's abstract thinking was good, as evidenced by his responses when asked to interpret the proverbs, "The early bird catches the worm "(to which the claimant replied, "Get there early, or you're out ofluck") and "Don't put all of your eggs in one basket" (to which the claimant responded, "Diversify"). The claimant was also asked to tell how football and baseball are alike ("they're sports"), how an appetizer and a dessert are alike ("they're food"), and how birth and death are alike ("they both happen to everything"). Overall, the claimant's thought processes appeared coherent, throughout the examination.

[TR 599-600]. On thought content, Dr. Ryser opined:

> Thought Content: The claimant denied any current suicidal ideation, as well as any plans or intent for self- harm behavior. He also denied any history of suicide attempts. When asked about getting angry, the claimant reported, "No." When asked how someone might know when he is angry, the claimant described, "It depends on who the person is. The most would be a verbal lashing." He reported no history of having been physical with another person as a result of anger, and he also reported no homicidal ideation. The claimant denied any excessive or unreasonable fears. Furthermore, he denied any history consistent with having suffered from obsessions or delusions, either at the present time or in the past.

[TR 600]. Further, on "sensorium and cognition," "memory," "concentration," and "judgment and insight," Dr. Ryser reported that the Plaintiff appeared to have "good" or "clear" skills with some slight limitations as to concentration [TR 600-601]. However, at the end of the report, Dr. Ryser opined that Plaintiff's prognosis was poor, and provided the following functional capacity:

> FUNCTIONAL CAPACITY:
> The claimant appears challenged to *consistently* understand, remember, and apply information. He appears *limited* with the ability to learn, recall, and use information to perform work activities. While he may be able to follow some one- or two-step instructions to carry out a task, he is likely to struggle with detailed/complex instructions. He could also be challenged to use reason and judgment to make work-related decisions, depending upon his mental state at a given time. He appears

> limited to concentrate, persist, and maintain pace, with regards to focusing attention on work activities, and staying on task at a sustained rate. He is also likely to have difficulty with the ability to relate to and work with supervisors, co- workers, and the public on a consistent and independent basis - once again, depending upon his mental state at a given time. Overall, his mental disorders would keep him from regulating his emotions, controlling his behavior, and/or maintaining his well-being in a work setting, and he is likely to struggle in dealing with normal pressures in a competitive work setting.

[TR 601-602]. The ALJ provided the following findings on Dr. Ryser's medical evidence:

> On September 11, 2019, the claimant presented to Christina "Niki" Ryser, Ph.D., for a psychological consultative examination. The claimant arrived with his mother, early. The claimant indicated that his mother had driven to the appointment. When the claimant was approached by the examiner in the waiting room, the claimant gave a greeting and followed the examiner to the private office. The claimant's mother remained in the reception area during the session. The claimant exhibited no grossly inappropriate mannerisms or behaviors, upon initial expression. The claimant provided all history. The claimant reported that the main reasons he was applying for disability were spinal stenosis and gout. The claimant reported smoking marijuana when his sister came to visit. On examination, the claimant's grooming and hygiene appeared fair. He appeared of average height, and overweight. He was observed to have a slow gait, walking with "a bit of a limp," and his posture was tense (seemingly due to physical discomfort/pain. No involuntary movements, tics, tremors or balance problems were noted. His facial expressions, mannerisms and motor activity were not excessive. The claimant's speech was of normal rate and volume, and he exhibited clear pronunciation. The claimant showed no major problems in expressing himself. He was appropriately talkative, spontaneously interjecting information a few times throughout the interview. Overall, the claimant presented with a decent attitude and he was cooperative, exhibiting an open interaction style. The claimant presented no clear evidence of a formal thought disorder. There was no looseness of associations, flight of ideas, circumstantiality or tangentiality. The claimant provided no history consistent with having suffered from a thinking disturbance in the past. The claimant's abstract thinking was good. The claimant's thought process appeared coherent, throughout the examination. The claimant denied any current suicidal ideation, as well as any plans or intent for self-harm behavior. The claimant also denied any history of suicide attempts. He denied getting angry. He reported no history of having been physical with another person as a result of anger, and he denied homicidal ideation. The claimant denied any excessive or unreasonable fears. He denied any history consistent with having suffered from obsessions or delusions. The claimant did not appear to be attending to any internal stimuli during the examination. He denied hallucinations. The claimant described his current mood as depressed. Overall, he exhibited depressed and irritable/mildly anxious affect, as evidenced by his facial expressions and verbalizations/tone of voice. The claimant's eye contact was fair throughout the session. Sensorium appeared to be

>clear and he did not appear confused. He was fully oriented. The claimant appeared to be of average intelligence, and he exhibited good vocabulary skills. The claimant exhibited a good fund of information regarding historical and current events. The claimant exhibited good memory skills. The claimant exhibited somewhat limited concentration skills, but he made no errors on Serial 7s. He was able to spell the word "world" backwards. He made no arithmetic errors in addition, subtraction, multiplication and division. He missed one of three word problems involving the same types of arithmetic skills, presented orally. On complex problems, the claimant required pauses and repetition to work through the exercises and produce his answers. The claimant exhibited good judgment and insight, as evidenced by his responses regarding several different scenarios. Dr. Ryser stated that based upon the claimant's verbalizations throughout the examination, the claimant appeared to have a "fairly good" recognition/understanding of most of his issues, as well as the likely outcome of most associated behaviors. The claimant was assessed with major depressive disorder, generalized anxiety disorder, and agoraphobia with panic attacks. Dr. Ryser opined that the claimant "appeared" challenged to consistently understand, remember and apply information. He "appeared" limited with the ability to learn, recall and use information to perform work activities. Dr. Ryser indicated that while the claimant "may" be able to follow some one or two-step instructions to carry out a task, he was likely to struggle with detailed/complex instructions. Dr. Ryser also indicated that the claimant "could" be challenged to use reason and judgment to make work-related decisions, depending upon his mental state at a given time. He "appeared" limited to concentrate, persist, and maintain pace, with regards to focusing attention on work activities, and staying on task at a sustained rate. Dr. Ryser further indicated that the claimant was "likely" to have difficulty with the ability to relate to and work with supervisors, coworkers and the public on a consistent and independent basis, depending upon his mental state at a given time. Dr. Ryser opined that the claimant's disorders would keep him from regulating his emotions, controlling his behavior, and/or maintaining his well-being in a work setting, and he was "likely" to struggle in dealing with normal pressures in a competitive work setting (Exhibit 5F pages 1-10). The opinions offered by Dr. Ryser have been considered and are found to not be persuasive. The appearances and likeliness of potential limitations offered by Dr. Ryser are not consistent with the examination findings in the pages preceding the functional capacity section of Dr. Ryser's report. Furthermore, the limitations offered by Dr. Ryser are not consistent with the medical evidence of record as discussed herein.

[TR 37-38].

Plaintiff argues the ALJ erred by not sufficiently explaining in the Decision the supportability and consistency factors as to Dr. Davis's and Dr. Ryser's opinions. Plaintiff urges the ALJ offered only "cursory, boilerplate language" as to these medical opinions. Contrary to

REPORT AND RECOMMENDATION – Page 18

Plaintiff's assertion, and as set forth *supra*, the ALJ's Decision detailed the totality of Dr. Davis's and Dr. Ryser's records, summarized their contents, discussed why their treatment records were lacking or internally inconsistent, and compared their opinions against the other medical opinions in the record. *See Guillory v. Saul*, No. 1:19-CV-632, 2021 WL 1600283, at *11 (E.D. Tex. Apr. 23, 2021) (internal citations omitted) (affirming where the "ALJ's decision sufficiently reflects his substantial compliance with the requirements of 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3)," noting "the ALJ cited the pertinent Regulations, which demonstrate their relevance in his deliberations of [p]laintiff's subjective symptoms," "the ALJ summarized evidence relevant to the factors," and "the ALJ articulated legitimate reasons for his decision."); *Renovato v. Saul*, No. H-20-643, 2021 WL 966098, at *6 (S.D. Tex. Mar. 15, 2021) (affirming an ALJ's decision that rejected a consultative examiner's opinion who determined plaintiff could never finger, feel, push, or pull, despite a fairly normal physical examination, and which was controverted by other record evidence). While there still exists limited case law at this juncture concerning what constitutes a sufficient "explanation" of supportability and consistency under 20 C.F.R. § 404.1520c(b)(2), the standard as described by one court, is:

> The measuring stick for an "adequate discussion" is whether the ALJ's persuasiveness explanation enables the court to undertake a meaningful review of whether his finding with regard to the particular medical opinion was supported by substantial evidence, and does not require the Court to merely speculate about the reasons behind the ALJ's persuasiveness finding or lack thereof.

*Luckett*, 2021 WL 5545233 at *4 (S.D. Tex. Nov. 26, 2021) (citing *Cooley v. Comm'r of Soc. Sec.*, No. 2:20-CV-46-RPM, 2021 WL 4221620, at *6 (S.D. Miss. Sept. 15, 2021)). The ALJ's explanation meets this articulation standard. *See Glass v. Comm'r of Soc. Sec.*, No. 2:20-cv-207, 2022 WL 1194690, at *2-3 (S.D. Miss. Jan. 12, 2022), *report and recommendation adopted*, No. 2:20-cv-207, 2022 WL 990223 (S.D. Miss. Mar. 31, 2022).

## CONCLUSION AND RECOMMENDATION

Pursuant to the foregoing, it is recommended that the decision of the Administrative Law Judge be **AFFIRMED**.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 17th day of November, 2022.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE